IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH A. SANDS, | ) | Case No. 1:23-CV-02222-JJH |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| WARDEN, HAROLD MAY | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | | **AND ORDER** |

## I.    INTRODUCTION

Petitioner, Joseph A. Sands ("Mr. Sands"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Sands was sentenced to 20 years in prison after being convicted of engaging in a pattern of corrupt activity, conspiracy to commit aggravated murder, and conspiracy to commit aggravated arson.

Mr. Sands asserts five grounds for relief. Respondent, Warden George Frederick ("Warden"),[1] filed an answer/return of writ on May 9, 2024. (ECF No. 8). Mr. Sands filed a traverse on August 27, 2024. (ECF No. 13). This matter was referred to me on November 21, 2023 under Local Rule 72.2 to prepare a report and recommendation on Mr. Sands' petition. (*See* ECF non-document entry dated November 21, 2023). Mr. Sands has also filed two pending motions: (1) a motion for an order compelling the Warden to provide him with a

---

[1]Harold May was previously the Warden of Marion Correctional Institution, where Mr. Sands is incarcerated. George Frederick, however, is now Warden of that facility. See https://drc.ohio.gov/about/facilities/marion-correctional (last visited on Nov. 18, 2024). Thus, Warden George Frederick should be substituted as the proper respondent. See 28 U.S.C. § 2243 ("The writ ... shall be directed to the person having custody of the person detained."); Fed. R. Civ. P. 25(d) (providing that "when a public officer who is a party in an official capacity ... ceases to hold office while the action is pending[,]" "[t]he officer's successor is automatically substituted as a party.").

more legible copy of the Warden's return of writ (ECF No. 10); and (2) a motion to expand the state court record (ECF No. 14). For the reasons set forth below, Mr. Sands' pending motions are DENIED. I also recommend that Mr. Sands' petition be DISMISSED. I further recommend that the Court not grant Mr. Sands a certificate of appealability.

## II. RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eleventh Appellate District summarized the facts as follows:

> {¶ 6} On April 1, 2006, Jason Green contacted Madison Township Detective Mark Parisi and requested that they meet outside of his hometown, North Perry Village. At the meeting, Mr. Green informed him that his friend, Mr. Sands, and Mr. Sands' girlfriend, Dawn Holin, were conspiring to kill four local officials. The intended targets were Painesville Municipal Court Judge Michael Cicconetti, North Perry Police Chief Denise Mercsak, North Perry Mayor Tom Williams, and North Perry Prosecutor Joseph Gurley.
>
> {¶ 7} Mr. Sands and Mr. Green became friends several years ago when Mr. Green moved next door to JB Performance. They would see each other at least daily, visit each other's homes and of course, hang out at JB Performance.
>
> {¶ 8} Both Mr. Green and Mr. Sands had an embattled history over the years with the North Perry Village Police and Mayor Williams, and both believed they were being unfairly harassed. There were incidents and altercations where the police would be called to Mr. Sands' automotive repair shop, JB Performance, which he owned with his girlfriend and co-conspirator, Ms. Holin. Mr. Green also had a lengthy criminal history, and faced various charges in the past few years for theft, menacing, animal cruelty, and littering, to name a few among the many. Mr. Green and Mr. Sands purchased a recording device and would record their conversations with the police and the mayor, in the hopes of proving they were being harassed. They also talked of a possible civil suit against the village. In fact, Mr. Green had recorded one such conversation with Officer Rex Buchs,

who told him that the police would probably leave him alone if he stopped hanging out with Mr. Sands.

{¶ 9} In the few months prior to the rise of the conspiracy, Mr. Green, his girlfriend, Janice Dotson, Mr. Sands, and Ms. Holin were prosecuted on various misdemeanor charges. Both Mr. Sands and Ms. Holin were convicted for failing to file income taxes. Mr. Sands served approximately five days in jail, followed by electronically monitored house arrest for ten days. He was then convicted for failure to pay sales tax. This was the sentencing that was pending at the time of his arrest for this conspiracy. His sentencing was set for April 20, 2006, and his idea was that Judge Cicconetti would be intimidated by the deaths of Mayor Williams and Prosecutor Gurley. Ms. Holin's sentencing was set for April 20, to be followed three days later by Mr. Green's sentencing for the menacing charge. Mr. Green's girlfriend, Ms. Dotson, was facing a barking dog charge.

{¶ 10} After hearing Mr. Sands lay out this chilling plot, Mr. Green went to the police. Since both Mr. Green and Mr. Sands had been voluntary informants for Detective Parisi in the past, Mr. Green felt he could trust the detective with this information. Mr. Green told the detective that Mr. Sands wanted to kill the victims by building homemade pipe bombs that were going to be loaded with shrapnel and ether, as well as possibly, homemade napalm. The plan was to kill Mayor Williams in the first few weeks of April by throwing a pipe bomb through the bay window of his home. The next target was to be Prosecutor Gurley. Then, after Mr. Sands was sentenced for failing to file his taxes on April 20, they would move on to the judge. By killing Mayor Williams and Prosecutor Gurley, Mr. Sands hoped to intimidate Judge Cicconetti to impose a lesser sentence.

{¶ 11} Detective Parisi equipped Mr. Green with a recording device to determine the seriousness of the threat. After meeting with Mr. Sands at JB Performance, Mr. Green immediately returned and provided Detective Parisi and Detective Timothy Doyle with a recording of a conversation he had with Mr. Sands, in which the two discussed the plan, the bomb, and possible alibis. Mr. Sands' discussion was very descriptive, detailed and vulgar.

{¶ 12} With this recording, the threat was deemed serious, and the Federal Bureau of Investigation and the Bureau of Alcohol, Tobacco, Firearms and Explosives were contacted. The FBI provided surveillance of Ms. Holin and Mr. Sands up to the point of arrest, and wanted to ensure this was not part of a larger domestic terrorist group. They also provided a GPS for Mr. Green's minivan. Likewise, the ATF was concerned from the very nature of the pipe bombs, and two days after the initial contact by Mr. Green, ATF took over the surreptitious recordings for the Madison Police.

{¶ 13} The intended targets were informed of the threat against them and surveillance was provided until Mr. Sands and Ms. Holin were arrested. Some of the targets and their families left their homes in fear of their lives until the ordeal was over.

{¶ 14} Mr. Sands devised all facets of the plan. His firebombing target was Mayor Williams. He was adamant that Mr. Green would drive, so he could run and throw the bomb into Mayor Williams' home. At the request of the police, Mr. Green suggested involving a third party, but Mr. Sands did not want anyone else involved. Mr. Sands also developed their alibi that they had gotten drunk and the three just stayed at the Sands/Holins' home. Since their history with the village was notorious, Mr. Sands knew they would be under suspicion. Because of that they would hit Prosecutor Gurley a month after Mayor Williams, and then they would possibly have to wait as long as a year to shoot Judge Cicconetti.

{¶ 15} Between April 4 and April 9 of 2006, Mr. Green continued to record conversations with Mr. Sands, recording approximately seven conversations. He was directed by the police to "act normal" and to follow Mr. Sands' directions. During the second of two April 4th recordings, Mr. Sands showed Mr. Green a container of gun powder and explained that he was going to build the pipe-bomb out of three-inch galvanized pipe, and attach four cans of ether to it. During this second conversation Mr. Sands and Ms. Holin discussed purchasing more gun powder and a fuse. He also discussed how to build homemade napalm, which he learned from one of his CB radio acquaintances, Mr. Pongrass. He also inquired over the CB radio where he could purchase gunpowder. Even though it was readily available at hunting and sporting goods stores, he chose to purchase the powder from an acquaintance, Mr. Gau. Per Mr. Sands' direction, Ms. Holin purchased the powder from Mr. Gau.

{¶ 16} The following day, before a dry-run directed at the mayor's home, Ms. Holin gave Mr. Green a list with Prosecutor Gurley's name and address, as well as the name of the judge, and asked him to locate the judge's address. Mr. Sands and Mr. Green then conducted a "dry-run" of Mayor Williams' home. At some point, Chief Mercsak saw Mr. Sands drive by her home, which she thought was odd since she had never seen him in the area before. North Perry Village is a very small town, about four square miles, with fewer than one thousand residents. She waved to Mr. Sands as he drove about five miles under the speed limit, but according to her, he did not respond. Mr. Sands testified that he drives his bike on that route all the time, and that he was driving to his business or home, and that he did wave back when he saw Chief Mercsak wave.

{¶ 17} Ms. Holin searched for a shop to buy the pipe after they agreed it would be best to pay in cash at a store that was not in the local area. Mr. Sands and Ms. Holin gave Mr. Green two $50 bills to purchase the galvanized pipe and four end caps. Mr. Green traveled to two different hardware stores in Willoughby with ATF following him in order to document the purchases. Mr. Green drove the items back to JB Performance and stored them in the bay of Mr. Sands' shop.

{¶ 18} By Friday, April 7, the three had everything they would need with the exception of the wick to light the pipe bomb. To purchase this, Mr. Sands wanted Mr. Green to accompany him to a store some sixty miles away in Ashland, Ohio, called Fin, Fur, & Feather. Like the pipe, he did not want to make the purchase

in the local area, where everyone seemed to know each other. Ms. Holin provided them with directions. Unbeknownst to Mr. Sands, ATF, the police, and the FBI were following them, with a plan to arrest the pair upon purchase. On the way to Ashland, Mr. Sands told Mr. Green they could not use the pipe they purchased because it was too identifiable. The police could easily discover that Mr. Green had purchased the pipe, thus, Mr. Sands suggested getting some pipe from his brother-in-law.

{¶ 19} At the store, the two looked at some ammunition, picked up the wick and some 2–way radios. Mr. Sands purchased fifteen feet of wick and a 2–way radio, and Mr. Green purchased a two-way radio as well. When they left the store, both were arrested and placed in separate vehicles. Mr. Green did not know in advance of the plans for arrest.

{¶ 20} At the time of arrest, Mr. Sands consented to a search of his home and business, which produced all of the equipment needed to make a pipe bomb. The search of his shop produced the now threaded end-caps and the long steel pipe that Mr. Green had purchased, as well as ether. A search of Mr. Sands' home produced a container of smokeless gun powder, as well as large quantities of ammunition, several rifles, shotguns, and handguns. Mr. Sands told the authorities that he did not even know how to make a pipe bomb, although the over seven recorded conversations between him and Mr. Green begged otherwise. He was mirandized, but then waived his right to remain silent. He claimed that the gunpowder was to reload shotgun shells, although those shells were never found; that the pipe was going to be used to fix his bathroom, although that is not the type of pipe used for plumbing; and that the wick was going to be used to blow up some "varmints."

(ECF No. 8-1, Exhibit 10); *State v. Sands*, No. 2007-L-003, 2008 WL 5428252, 2008-Ohio-6981 (11th Dist. Dec. 31, 2008).

## III. PROCEDURAL HISTORY

### A. <u>State Court Conviction</u>

On May 26, 2006, Mr. Sands was indicted in the Lake County Court of Common Pleas on: (1) two first-degree felony counts of engaging in a pattern of corrupt activity in violation of R.C. § 2923.32(A)(1) ("RICO"); (2) four first-degree felony counts of conspiracy to commit aggravated murder in violation of R.C. § 2923.01(A)(1); (3) four second-degree felony counts of conspiracy to commit aggravated arson in violation of R.C. § 2923.01(A)(1); and (4) four third-degree felony counts of conspiracy to commit aggravated arson in violation

5

of R.C. § 2923.01(A)(1). (ECF No. 8-1, Exhibit 1). On June 30, 2006, Mr. Sands pled not guilty to the charges. (ECF No. 8-1, Exhibit 2).

On November 7, 2006, Mr. Sands filed a motion to dismiss the indictment, alleging that it was defective because the conspiracy counts all arose from the same agreement or continuous conspiratorial relationship and could not be separately charged. (ECF No. 8-1, Exhibit 3). Mr. Sands also argued that the conduct alleged did not satisfy the elements of Ohio's RICO statute. *Id*. No ruling on the motion appears in the state court record.

The case proceeded to trial. Prior to trial, the court merged the two RICO counts (Counts One and Two) by agreement of the parties. (ECF No. 8-1, Exhibit 5).  The remaining counts were renumbered. *Id*. The jury convicted Mr. Sands on the merged RICO count, three counts of conspiracy to commit aggravated murder, one second-degree count of conspiracy to commit aggravated arson, and one third-degree count of conspiracy to commit aggravated arson. *Id*. The jury acquitted Mr. Sands of the remaining charges. *Id*. On December 11, 2006, the trial court sentenced Mr. Sands to a total of twenty years in prison, plus a period of "up to" five years of post-release control. (ECF No. 8-1, Exhibit 6).

### B. <u>Direct Appeal</u>

On January 10, 2007, Mr. Sands, through counsel, timely filed a notice of appeal to the Eleventh Appellate District. (ECF No. 8-1, Exhibit 7). On February 4, 2008, Mr. Sands, through new appellate counsel, filed his appellate brief, raising the following assignments of error:

1. Pervasive instances of sub-standard representation by Trial Counsel were so serious as to deprive Appellant of a fair trial in violation of the Sixth Amendment to the United States Constitution and Article I, Section 10, of the Ohio Constitution.

2. The evidence was insufficient to sustain a conviction on the RICO count in the Indictment.

3.  Appellant committed no offense prohibited by R.C. 2923.32 which was utilized for an improper purpose by the State of Ohio.

4.  The Trial Court erred in admitting other acts evidence denying Appellant a fair trial.

5.  Appellant was penalized for his silence in violation of the rights guaranteed to him by the Fifth and Sixth Amendments to the United States Constitution.

6.  Victim-impact testimony during the guilt phase of trial was irrelevant and/or prejudicial resulting in the denial of a fair trial.

7.  The single conspiracy offense and the RICO count were allied offenses of similar import.

(ECF No. 8-1, Exhibit 8).

On December 31, 2008, the Eleventh Appellate District affirmed Mr. Sands' conviction and sentence. (ECF No. 8-1, Exhibit 10). On September 27, 2010, Mr. Sands, through new counsel, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 8-1, Exhibit 11). Mr. Sands also filed a motion for leave to file a delayed appeal, arguing that his prior appellate counsel failed to inform him of the Eleventh Appellate District's decision. (ECF No. 8-1, Exhibit 12). On December 1, 2010, the Ohio Supreme Court denied Mr. Sands' motion for leave to file a delayed appeal and dismissed the appeal. (ECF No. 8-1, Exhibit 14).

## C.  Post-Conviction Filings

In addition to his direct appeal, Mr. Sands has filed numerous post-conviction motions and petitions challenging his conviction and sentence. Because some of those filings are relevant to the parties' arguments, I will briefly summarize Mr. Sands' post-conviction filings here.

### 1.  Petition to Vacate or Set Aside Conviction

On August 8, 2012, Mr. Sands, acting *pro se*, filed a petition in the trial court to vacate or set aside his conviction pursuant to R.C. 2953.21, arguing that he received the ineffective

assistance of counsel at trial and during his direct appeal. (ECF No. 8-1, Exhibit 15). On August 13, 2012, the trial court dismissed Mr. Sands' petition, holding that it was untimely and that each of his claims was without merit or barred by the doctrine of res judicata. (ECF No. 8-1, Exhibit 17). Mr. Sands timely appealed to the Eleventh Appellate District, which affirmed the trial court's ruling on June 20, 2013. (ECF No. 8-1, Exhibits 18, 23). Mr. Sands did not file an appeal to the Ohio Supreme Court.

On August 6, 2013, Mr. Sands, acting *pro se*, filed an application in the Eleventh Appellate District to reopen his appeal pursuant to Ohio Appeal Rule 26(B), alleging that he received the ineffective assistance of appellate counsel during his direct appeal. (ECF No. 8-1, Exhibit 24). On November 7, 2021, the Eleventh Appellate District denied Mr. Sands' application, holding that he failed to comply with the procedural rules governing Rule 26(B) applications. (ECF No. 8-1, Exhibit 26). Mr. Sands filed a motion to reconsider, which he later withdrew. (ECF No. 8-1, Exhibits 27-28). Mr. Sands did not file a notice of appeal to the Ohio Supreme Court.

### 2. First Federal Habeas Petition

On January 30, 2014, Mr. Sands, acting *pro se*, filed a § 2254 habeas petition in this Court, in a case captioned *Sands v. Edenfield*, No. 1:14-cv-00251-JJH, asserting that he received the ineffective assistance of trial and appellate counsel. (ECF No. 8-1, Exhibit 30). The respondent moved to dismiss Mr. Sands' petition as untimely. (ECF No. 8-1, Exhibit 32). On February 12, 2015, Magistrate Judge William H. Baughman, Jr. issued a report and recommendation, recommending that the Court grant the Warden's motion to dismiss. (ECF No. 8-1, Exhibit 37). On April 7, 2015, the Court adopted Magistrate Judge Baughman's recommendation and dismissed Mr. Sands' claims as untimely. (ECF No. 8-1, Exhibit 39).

On May 1, 2015, Mr. Sands filed a notice of appeal to the Sixth Circuit. (ECF No. 8-

1, Exhibit 40). On May 26, 2015, Mr. Sands filed a motion in the Sixth Circuit for a certificate of appealability. (ECF No. 8-1, Exhibit 41). On August 31, 2015, the Sixth Circuit denied Mr. Sands' motion for a certificate of appealability. (ECF No. 8-1, Exhibit 42).

### 3.  *Motion for Sentencing*

On July 17, 2015, Mr. Sands filed a "motion for sentencing" in the Lake County Court of Common Pleas. (ECF No. 8-1, Exhibit 43). Mr. Sands argued that he had received multiple convictions and sentences for allied offenses in violation of Ohio law. Mr. Sands also argued that the sentencing judgment entry was invalid because it stated that he would be subject to a period of "up to" five years of post-release control, rather than a mandatory period of five years as Ohio law required. Finally, Mr. Sands argued that the sentencing entry was invalid because it did not indicate the order in which Mr. Sands was to serve his sentence in relation to a separate federal sentence that he had also received.

On November 20, 2015, the trial court denied Mr. Sands' motion. (ECF No. 8-1, Exhibit 45). Mr. Sands timely filed a notice of appeal. (ECF No. 8-1, Exhibit 48). In his appellate brief, Mr. Sands raised the following assignments of error:[2]

1. The Judgement of Conviction and Sentence for Count One, Engaging in a Pattern of Corrupt Activity, Ohio's Version of "RICO", are Illegal and Void as the Indictment Either Fails to Charge an Offense, of the Language of Count One, Per Se, Negates the Offense it Attempts to Charge.

2. Appellant's Sentence and Conviction for Count One, Engaging in a Pattern of Corrupt Activity, are Ilelgal and Void as a Matter of Law, where R.C. 2923.32(A)(1) Requires Two of More Underlying Offenses, where the State and Trial Court "Maintained" "Only One Conspiracy" Charged Multiplicitously in Counts 2, 3, 5, 6, and 7, Until After the Jury Determined Guilt, but "Merged" them Prior to Imposing Sentence, Disposing of the "Pattern of Corrupt Activity" Element as Not Only Allied Offenses of Similar Import, but as Involving "Only One Conspiracy" Implicating Double Jeopardy; the Grand Jury Lacked Legal Power, Authority, and/or Jurisdiction to Indict the Appellant for RICO; and the

---

[2] Mr. Sands' assignments of error are reproduced here verbatim.

Trial Court Lacks Legal Power, Authority and/or Jurisdiction to Render Judgment of Conviction and Impose Sentence for the RICO Charge.

3.  The Trial Court and the State of Ohio were Divested of Jurisdiction over the Appellant's Criminal Case and/or to Sentence or "Resentence" the Appellant After the Trial Court and/or State Transferred Custody of the Appellant to the Federal Government, where the Appellant was Tried, Convicted, and Fully Served a Ten-Year Sentence, Without the State or Federal Government having Sought or Issued a Governor's Warrant, or Any Other Type of Document Required to Legally Transfer custody of the Appellant to the Federal Government; and Where the State Made no Attempt Whatsoever During Said Ten-Year Sentence, to have the Appellant Returned to Ohio to Impose a Valid Sentence.

4.  The Sentence is Unlawful and Not Authorized by Law, and therefore Illegal and Void where the Trial Court Failed to Comply with All Mandatory Statutory Sentencing Provisions when Pronouncing the "Attempted Sentence"; and the Sentence Violates Constitutional Double Jeopardy Prohibitions.

5.  The Failure of the Trial Court to Dispose of Counts Four, and Eight through Fourteen in the Judgment Entry of Sentence Results in a Judgment Entry that Does Not Fully Determine the case; that is Not Final or Appealable Under Article IV, §3(B)(2), of the Ohio Constitution, R.C. 2505.02, and/or R.C. 2953.02, and Causes any Appeal Taken from such Judgment to be "Obiter Dictum"; and the Appellant's criminal case has Never Left the Trial Court.

6.  The Postrelease Control Imposed by the Trial Court is Illegal, Void, and Unenforceable as a Matter of Law.

7.  The Judgment and Sentence are Illegal and Void where the Trial Court "Merged" Count 2 "RICO" with Counts 3, 5, 6, and 7, and Imposed Sentence Thereon, where Count 2 "RICO" was Dismissed Prior to Trial, Not Submitted to the Jury, and where the Appellant was Not Found Guilty of Count 2 "RICO" by the Jury.

(ECF No. 8-1, Exhibit 49).

On September 30, 2016, the Eleventh Appellate District vacated Mr. Sands' sentence in part but otherwise affirmed the trial court's judgment. (ECF No. 8-2, Exhibit 52). The Eleventh Appellate District agreed with Mr. Sands that the trial court erred in entering a sentencing order stating that Mr. Sands would be subject to "up to" five years of post-release control, rather than properly reflecting that he was subject to a mandatory five years of post-release control. The court vacated that portion of Mr. Sands' sentence and remanded for a

new sentencing hearing on the imposition of post-release control. The Eleventh Appellate District rejected Mr. Sands' remaining assignments of error.

On November 9, 2016, Mr. Sands filed a notice of appeal to the Ohio Supreme Court from the unfavorable portions of the Eleventh Appellate District's decision. (ECF No. 8-2, Exhibit 53). On May 13, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 8-2, Exhibit 56).

### 4. *First State Habeas Petition*

On April 16, 2016, Mr. Sands filed a petition for a writ of habeas corpus in the Third Appellate District. (ECF No. 8-2, Exhibit 57). Mr. Sands asserted, among other things, that he was entitled to a writ of habeas corpus because: (1) the indictment failed to charge a valid RICO offense; (2) the RICO charge was not based on two separate predicate offenses; (3) the trial court failed to make the requisite factual findings before imposing consecutive sentences; and (4) he was sentenced to ten years in prison for a count that the jury did not convict him on. On June 16, 2018, the Third Appellate District dismissed Mr. Sands' petition for failure to comply with the statutory requirements governing habeas petitions and for failure to state a claim for relief. (ECF No. 8-2, Exhibit 59). Mr. Sands did not file an appeal to the Ohio Supreme Court.

### 5. *Appeal of Nunc Pro Tunc Resentencing Entry*

On November 15, 2016, the Lake County Court of Common Pleas entered a *nunc pro tunc* order providing that Mr. Sands was subject to a mandatory five-year term of post-release control. (ECF No. 8-2, Exhibit 60). Mr. Sands appealed to the Eleventh Appellate District, arguing that (1) the trial court's *nunc pro tunc* order was void because the order did not set forth all terms of Mr. Sands' sentence in a single document; and (2) the trial court erred in sentencing Mr. Sands to separate terms on allied offenses of similar import. (ECF No. 8-2,

Exhibit 61-62). On July 17, 2017, the Eleventh Appellate District affirmed, holding that his first assignment of error was without merit and that his second was both meritless and barred by res judicata. (ECF No. 8-2, Exhibit 65). On August 25, 2017, Mr. Sands filed a notice of appeal to the Ohio Supreme Court. (ECF No. 8-2, Exhibit 66). On December 6, 2017, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 8-2, Exhibit 69).

### 6. *Motion for Arrest of Judgment*

On December 14, 2016, Mr. Sands filed a motion in the Lake County Court of Common Pleas for leave to file a motion for arrest of judgment pursuant to Ohio Crim. R. 34, arguing that the indictment was defective because it failed to place him on notice of the charges against him and failed to allege the essential elements of the charged offenses. (ECF No. 8-2, Exhibit 70). On December 28, 2016, the trial court denied the motion. (ECF No. 8-2, Exhibit 71). Mr. Sands timely appealed to the Eleventh Appellate District, which affirmed on July 17, 2017, holding, among other things, that Mr. Sands' motion was untimely and barred by res judicata. (ECF No. 8-2, Exhibits 72, 75). Mr. Sands appealed to the Ohio Supreme Court, which declined to accept jurisdiction over the appeal on November 1, 2017. (ECF No. 8-2, Exhibits 76, 79).

### 7. *Motion to Vacate Conviction and Sentence*

On July 14, 2017, Mr. Sands filed a motion in the trial court to vacate his conviction and sentence, arguing that his conviction was void because no criminal complaint was ever filed against him. (ECF No. 8-2, Exhibit 80). On August 8, 2017, the trial court denied Mr. Sands' motion. (ECF No. 8-2, Exhibit 81). Mr. Sands timely appealed, and the Eleventh Appellate District affirmed the trial court's ruling on June 25, 2018. (ECF No. 8-2, Exhibits 82, 86). Mr. Sands appealed to the Ohio Supreme Court, which declined to accept jurisdiction

over the appeal on August 29, 2018. (ECF No. 8-2, Exhibits 87, 90).

### 8. *Motion to Dismiss Conviction*

On November 20, 2017, Mr. Sands filed a motion in the trial court to dismiss his conviction, alleging that it was based on testimony that the State and the trial court knew to be perjured. (ECF No. 8-2, Exhibit 91). On November 29, 2017, the trial court denied Mr. Sands' motion. (ECF No. 8-2, Exhibit 93). Mr. Sands did not appeal the trial court's order.

On May 9, 2018, Mr. Sands filed another motion in the trial court alleging that the court lacked jurisdiction to pronounce his sentence because it was the result of perjured testimony. (ECF No. 8-2, Exhibit 94). On February 11, 2019, the trial court denied Mr. Sands' motion, holding that it was barred by res judicata. (ECF No. 8-2, Exhibit 97). Mr. Sands appealed to the Eleventh Appellate District, which affirmed on December 2, 2019. (ECF No. 8-2, Exhibits 98, 103). Mr. Sands filed an appeal to the Ohio Supreme Court, which declined to accept jurisdiction over the appeal on February 18, 2020. (ECF No. 8-2, Exhibits 104, 107).

### 9. *Second Federal Habeas Petition*

On August 14, 2019, Mr. Sands, acting *pro se*, filed a second § 2254 habeas petition in this Court, in a case captioned *Sands v. Warden Marion Correctional Institution*, No. 1:19-cv-2018-JJH. (ECF No. 8-2, Exhibit 108). On September 3, 2019, Mr. Sands filed a motion to stay his habeas proceeding until his then-pending state court appeals were resolved and his claims were exhausted. (ECF No. 8-2, Exhibit 109). On March 5, 2020, the Court denied Mr. Sands' motion to stay and dismissed his petition without prejudice for failure to exhaust. (ECF No. 8-2, Exhibit 110).

### 10. *Motion for Resentencing*

On February 21, 2020, Mr. Sands filed a motion in the Lake County Court of Common Pleas, seeking resentencing on the basis that the trial court sentenced him to a term exceeding

the minimum sentence on the RICO count without providing factual support for the sentence. (ECF No. 8-2, Exhibit 111).  On February 26, 2020, the trial court denied Mr. Sands' motion. (ECF No. 8-2, Exhibit 112). Mr. Sands timely appealed to the Eleventh Appellate District, which affirmed on August 3, 2020, holding that Mr. Sands' argument was barred by res judicata and that it failed on the merits. (ECF No. 8-2, Exhibits 113, 117). On September 1, 2020, Mr. Sands filed a motion for reconsideration, which the Eleventh Appellate District denied on October 21, 2020. (ECF No. 8-2, Exhibits 121, 124). Mr. Sands appealed to the Ohio Supreme Court, which declined to accept jurisdiction over the appeal. (ECF No. 8-2, Exhibits 125, 128).

On August 7, 2020, Mr. Sands filed a motion in the Eleventh Appellate District to certify a conflict per Article IV, Section 3(B)(4) of the Ohio Constitution and Ohio Appellate Rule 25, arguing that the Eleventh Appellate District's decision conflicted with two decisions from the Ohio Supreme Court and one decision from the Third Appellate District. (ECF No. 8-2, Exhibit 118). On August 19, 2020, the Eleventh Appellate District denied Mr. Sands' motion. (ECF No. 8-2, Exhibit 119).

### *11. Motion to Dismiss Judgment of Conviction*

On March 20, 2020, Mr. Sands filed a motion in the trial court to dismiss the judgment of conviction, arguing that the judgment entry memorializing his sentence violated Ohio's single document rule because the entry imposing a mandatory five-year term of post-release control was not contained in the same document as the judgment entry memorializing the rest of his sentence. (ECF No. 8-2, Exhibit 129). On June 5, 2020, the trial court denied Mr. Sands' motion. (ECF No. 8-2, Exhibit 130). Mr. Sands timely appealed to the Eleventh Appellate District. (ECF No. 8-2, Exhibit 131). On December 14, 2020, the Eleventh Appellate District affirmed. (ECF No. 8-3, Exhibit 135). Mr. Sands appealed to the Ohio Supreme Court, which

declined to accept jurisdiction on March 16, 2021. (ECF No. 8-3, Exhibits 136, 139).

### 12. Motion to Certify Conflict

On December 17, 2020, Mr. Sands filed a motion in the Eleventh Appellate District to certify a conflict pursuant to Article IV, Section 3(B)(4) of the Ohio Constitution and Ohio Appellate Rule 25 regarding whether his sentencing judgment entry violated Ohio's single document rule. (ECF No. 8-3, Exhibit 140). On January 26, 2021, the Eleventh Appellate District denied Mr. Sands' motion. (ECF No. 8-3, Exhibit 143). Mr. Sands appealed to the Ohio Supreme Court, which declined to accept jurisdiction over the appeal on March 30, 2021. (ECF No. 8-3, Exhibits 144, 147).

### 13. Motion for Leave to File Motion to Dismiss Void Sentence

On April 29, 2020, Mr. Sands filed a motion in the trial court for leave to file a motion to dismiss his sentence, arguing that the sentence was void because he received multiple sentences for allied offenses of similar import. (ECF No. 8-3, Exhibit 148). On June 5, 2020, the trial court denied Mr. Sands' motion. (ECF No. 8-3, Exhibit 149). Mr. Sands filed a notice of appeal to the Eleventh Appellate District, which affirmed on November 30, 2020, holding that Mr. Sands' argument was barred by res judicata and was without merit. (ECF No. 8-3, Exhibits 150, 154). Mr. Sands appealed to the Ohio Supreme Court, which declined to accept jurisdiction of the appeal on February 16, 2021. (ECF No. 8-3, Exhibits 155, 158).

### 14. Second State Habeas Petition

On September 27, 2021, Mr. Sands, through counsel, filed a state habeas petition in the Marion County Court of Common Pleas, arguing that the trial court improperly amended the substance of the indictment in violation of Ohio law and Mr. Sands' rights under the federal constitution. (ECF No. 8-3, Exhibit 159). On November 15, 2021, the trial court denied Mr. Sands' petition, holding that it was barred by res judicata. (ECF No. 8-3, Exhibit

161). Mr. Sands appealed to the Third Appellate District, which affirmed on April 25, 2022. (ECF No. 8-3, Exhibits 162, 165). Mr. Sands did not appeal to the Ohio Supreme Court.

### 15. Third Federal Habeas Petition

On December 20, 2021, Mr. Sands, acting *pro se*, filed a third § 2254 habeas petition in this Court, in a case captioned *Sands v. Warden Marion Correctional Institution*, No. 1:21-cv-2399-JJH. (ECF No. 8-3, Exhibit 166). In the petition, Mr. Sands raised similar claims to the ones he raises in his present petition. Mr. Sands also moved to stay his habeas petition until his then-pending state court habeas petition was resolved. (ECF No. 8-3, Exhibit 167). The Warden moved to transfer Mr. Sands' petition to the Sixth Circuit, arguing that it was a successive habeas petition under § 2244(b) and that Mr. Sands could not pursue it absent leave from the Sixth Circuit. (ECF No. 8-3, Exhibit 168).

On October 17, 2022, I recommended that the Court deny the Warden's motion to transfer because the *nunc pro tunc* sentencing entry modifying Mr. Sands' post-release control constituted a new, less favorable judgment such that Mr. Sands' challenge to his sentence did not constitute a successive petition. (ECF No. 8-3, Exhibit 169). I also recommended that the Court deny Mr. Sands' motion to stay and either dismiss the petition without prejudice or give Mr. Sands an opportunity to file an amended petition omitting his unexhausted claims. *Id*. On March 31, 2023, the Court adopted my report and recommendation, denied the Warden's motion to transfer, and dismissed Mr. Sands' petition without prejudice for failure to exhaust. (ECF No. 8-3. Exhibit 171).

### 16. Third State Habeas Petition

On June 27, 2022, Mr. Sands filed another petition for a writ of habeas corpus in the Third Appellate District, alleging that he was currently incarcerated on a charge for which the jury had acquitted him. (ECF No. 8-3, Exhibit 172). On November 10, 2022, the Third

Appellate District dismissed Mr. Sands' petition for failure to comply with the rules governing the filing of habeas petitions. (ECF No. 8-3, Exhibit 174). The court also held that Mr. Sands' argument was not cognizable in a habeas proceeding and that it was barred by res judicata. *Id*. Mr. Sands appealed to the Ohio Supreme Court, which affirmed the Third Appellate District's judgment on August 2, 2023. (ECF No. 8-3, Exhibits 175, 179).

### D. **Federal Habeas Action**

On October 30, 2023, Mr. Sands, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Sands' habeas petition asserts five grounds for relief:[3]

1. The state of Ohio abridged upon the petitioner, life, liberty, without an due process of law, in violation of petitioner United States constitutional right, per Amendment 14.

   Supporting Facts: The State court Sentencing Judgment entry of Nov 15/2016, is not an final appealable order under ohio's Laws, that would allow the Petitioner to be able Appeal his conviction and sentence as a matter of right to any state court or appeal court.

   Under Criminal rule and procedure 32(C), requiers the state sentencing court Judgment to contain (4) elements, to be considered an Final appealable order Per R.C. 2505.02, the state court sentencing Judgment entry does not contain the essential elements of Criminal rule 32(C), that would allow the petitioner to be to appeal his conviction and sentence to the state of ohio's court of appeals, and furthermore, ohio's law's under R.C. 2505.02 and Crim Rule 32(C), Requires only one sentencing judgment entry to be an final appealable order per Crim Rule 32(C), in this case the petitioner has two separate sentencing judgment entries, Preventing the petitioner from appealing his conviction sentence, to any Ohio state Appeals court as of right.

2. State of Ohio abridged upon petitioner's United States constitutional right per Amendments 5, 6, and 14.

   Supporting Facts: During Petitioner Trial the state court agreed, that count one and count two, Engaging in an pattern of corrupt activity would violate the petitioner 5, 6, and 4, amendments Clause, to the united states Constitution of Double Jeopardy rights, so the state trial court order count (2), to be Merged into count (1), under ohio's merger Doctrine, Per R.C. 2941.25(A), Whereas there would only be one count of Engaging in an Pattern of Corrupt Activity, Then the

---

[3] Mr. Sands' grounds for relief are reproduced here verbatim.

trial court revived the merged count two (2), and changed the Identity of count two (2) from Engaging in an Pattern of corrupt activity, to now being an Conspiracy to commit aggravated Murder, an Charge not founded by Lake county Grand jury, nor was the Petitioner Indicted for such an Criminal charge, the state Trial court Created this Knew criminal offense just to increase the Petitioner Punish without any Due Process of Law.

3. State of Ohio abridged upon petitioner's United States constitutional rights per Amendments 5, 6, and 14.

   Supporting Facts: The state court is without Subject, Matter, Jurisdiction, to impose an Twenty (20) Year Prison term upon the Petitioner, as the States Indictment Fails to state any Criminal Offense, That would place the Petitioner on notice of the charged Offenses foe which the Petitioner would ahve to Defend against or that able the petitioner to Plea an second Prosecution for the same criminal offense, inviolation of petitioner Due Process Rights.

4. State of Ohio abridged upon petitioner United States constitutional rights per Amendments 5, 6, and 14.

   Supporting Facts: The state court improperly sentenced the petitioner to an consecutive sentence for an term of actual incarceration, That was longer than the Minimum term, without Engaging in an Fact-Finding to support the state courts sentence as Required under Ohio's Law's.

5. State of Ohio Abridged Upon Petitioner United States Constitutional Rights Amendment, 5, 6, and 14.[4]

   Supporting Facts: The Lake county common pleas trial court of Ohio, Changed the Identity of count (6), From a Conspiracy to commit Aggravated Murder, to now being a Conspiracy to commit Aggravated Arson, Being count (14), The Trial court is Falsely restraining the Petitioner of his liberty, upon an charge the petitioner was not found guilty of, being count (14), Causeing the trial court to be without any Jurisdiction to restrain the Petitioner of his Liberty for Ten (10) Years on Count (6), Threw the use of False Imprisonment, which is Illegal and very Prejudicial to the Petitioner, and is an Violation of Petitioner Fundamental and Substantial Due Process Right of Law, Inviolation of Petitioner 5, 6, and 14, Amendment to the United States Constitution.

   *Id*.

---

[4] Mr. Sands' petition only listed four grounds for relief, but the attachment to his petition set forth supporting facts for five separate grounds. (ECF No. 1). In the return of writ, the Warden presumes that Mr. Sands' fifth supporting fact is intended to accompany his second ground for relief. (ECF No. 8, PageID # 60). In his traverse, Mr. Sands clarifies that he intended to assert five separate grounds for relief, and that the fifth ground for relief was omitted as a result of a clerical error. (ECF No. 13, PageID # 2233). In an abundance of caution, I will analyze Mr. Sands' fifth ground for relief as a separate claim notwithstanding his failure to separately assert it in the body of his petition.

The Warden filed an answer/return of writ on May 9, 2024. (ECF No. 8). On June 5, 2024, Mr. Sands filed a motion for a court order requiring the Warden to provide him with a more readable copy of the Warden's return of writ and the accompanying state court record. (ECF No. 10). On August 27, 2024, Mr. Sands filed his traverse. (ECF No. 13). On the same day, Mr. Sands filed a motion to expand the state court record. (ECF No. 14).

## IV. MR. SANDS' MOTIONS

### A.  Motion for Full Printed Text of Return of Writ

Mr. Sands first moves for an order requiring the Warden to provide him with a copy of the Warden's return of writ and the accompanying state court record containing larger font. Mr. Sands has attached a sample page from the service copy that the Warden provided him, showing that the Warden printed the return of writ and the state court record with four pages on each sheet of paper, resulting in much smaller font for each page. Mr. Sands states that he requested a copy from the Warden that was easier to read, but that the Warden refused to provide one.

The Warden acknowledges providing Mr. Sands with a copy containing four pages to a sheet, but asserts that doing so is the counsel's standard practice in cases with larger records like this one. The Warden also argues that it would be cost prohibitive for the Warden to provide defendants with full-sized copies of the record in cases with large state court records.

I agree with Mr. Sands that the service copy the Warden provided is more difficult to read than a full-sized version would have been. And, while I am cognizant of the Warden's concerns regarding excessive cost, it also would have been preferrable for the Warden to provide Mr. Sands with a full-sized copy that was easier to read. That being said, Mr. Sands was able to file a traverse in which he responded to the Warden's arguments and in which he cited to specific portions of the record where appropriate. In light of the fact that Mr. Sands

has already filed his traverse and has not identified any specific portions of the record that are unreadable or that precluded him from making his arguments, Mr. Sands' motion is hereby denied as moot.

### B.  Motion to Expand Record

Mr. Sands has also moved for an order compelling the Warden to file additional state court pleadings that Mr. Sands asserts are missing from the state court record that the Warden filed in this case.

Rule 7(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that a court may direct the parties to expand the record by submitting additional materials relating to the petition. *See* Rules Governing § 2254 Cases, R. 7(a). "[T]he Sixth Circuit has recognized that expansion of the record in habeas cases 'is not mandatory . . . and is left to the discretion of the trial judge.'" *Myers v. Haviland*, No. 3:16-CV-00659, 2017 WL 9476855, at *17 (N.D. Ohio May 8, 2017) (quoting *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988)). However, "[a] district court's discretion to expand the record is limited by their inability to consider evidence not presented before the state courts when determining the merits of a claim that the state courts addressed on the merits." *Newton v. Turner*, No. 1:20-cv-2799, 2024 WL 1853042, at *2 (N.D. Ohio Apr. 29, 2024) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)).

Mr. Sands argues that the record should be expanded to include seven pleadings from the state court proceedings: (1) an August 2, 2023 motion for reconsideration he filed in the Ohio Supreme Court; (2) the Ohio Supreme Court order denying his motion for reconsideration; (3) a November 10, 2022 motion for relief from judgment Mr. Sands filed in the Third Appellate District; (4) the Third Appellate District's order denying his motion for relief from judgment; (5) Mr. Sands' motion to dismiss his judgment of conviction filed in

the Lake County Court of Common Pleas; (6) The Eleventh Appellate District's December 14, 2020 order affirming the trial court's denial of his motion to dismiss the judgment of conviction; and (7) The Ohio Supreme Court's March 30, 2021 order declining to accept jurisdiction over his appeal from the Eleventh Appellate District's order denying his motion to certify a conflict.

Three of those documents—Mr. Sands' motion to dismiss his judgment of conviction, the Eleventh Appellate District's December 14, 2020 order, and the Ohio Supreme Court's March 30, 2021 order—are already part of the state court record filed with the Court. (ECF No 8-2, Exhibit 91; ECF No. 8-3, Exhibits 135, 147). Mr. Sands' motion is denied as moot with respect to those documents. With respect to the remaining four pleadings, Mr. Sands has not explained how they are relevant to the parties' arguments other than a bare assertion that they should be included in the record. Moreover, as set forth below, Mr. Sands' claims are non-cognizable and/or procedurally defaulted, and he does not suggest that the missing documents would change the outcome on the question of procedural default or cognizability. Expansion of the record is thus unnecessary and unwarranted. *See Newton*, 2024 WL 1853042 at *2 (holding that expansion of record was unwarranted where petitioner's claims were either non-cognizable or procedurally defaulted); *Hartman v. May*, No. 3:23-CV-00005, 2023 WL 11016263, at *10 (N.D. Ohio July 20, 2023) (denying in part petitioner's motion to expand record where documents were unnecessary to resolution of petition); *Brown v. Miller*, No. 5:13CV2842, 2015 WL 4879100, at *22 (N.D. Ohio Aug. 14, 2015) (denying motion to expand record where existing record was sufficient to resolve petitioner's claims). Mr. Sands' motion to expand the record is denied.

## V.  MR. SANDS' HABEAS PETITION

### A.  Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Lake County Court of Common Pleas sentenced Mr. Sands, and the Court takes judicial notice that Lake County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Sands' § 2254 petition.

### B.  Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default

23

can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in

which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D. AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes

25

only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court

relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

### E. <u>ANALYSIS</u>

Mr. Sands asserts five grounds for relief, each of which argues that his due process rights were violated. The Warden argues that all five grounds are not cognizable in a federal habeas proceeding and that grounds two through five are also procedurally defaulted. I agree with the Warden on both arguments and recommend that the Court dismiss Mr. Sands' claims in their entirety.

### *1. Ground One: Lack of Final Appealable Order*

In his first ground for relief, Mr. Sands asserts that his due process rights were violated because the trial court's November 15, 2016 *nunc pro tunc* entry violated Ohio's single judgment rule and prevented him from appealing his conviction. The Warden responds that Mr. Sands' claim is not cognizable in this proceeding because Mr. Sands alleges only a violation of state law.

As noted above, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey*, 500 F.3d at 519. "[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). In his first ground for relief, Mr. Sands argues that the trial court violated R.C. 2505.02 and Ohio Crim R. 32(C)—two state law provisions—

27

and prevented him from appealing his sentence under Ohio law. Regardless of the merits of Mr. Sands' argument (which Ohio courts rejected), it is not based on an alleged violation of federal law and thus is not cognizable in a federal habeas proceeding.

It is of no moment that Mr. Sands asserts that the state courts' alleged failure to follow Ohio sentencing law violated his federal due process rights, as "[s]imply inserting due process and equal protection language into a ground for relief does not make it cognizable on federal habeas review." *Chapman v. Bracy*, No. 1:18CV00775, 2019 WL 11461784, at *17 n.9 (N.D. Ohio June 25, 2019), *report and recommendation adopted*, 2020 WL 6481831 (N.D. Ohio Nov. 4, 2020); *see also Perez v. Sheldon*, No. 3:19-CV-01013-JRA, 2022 WL 17853552, at *7 (N.D. Ohio Nov. 3, 2022), *report and recommendation adopted*, 2022 WL 17851001 (N.D. Ohio Dec. 22, 2022) ("Nor does Perez's invocation of the phrases 'due process' and 'equal protection' transform the substance of his claim into a federal constitutional claim."). I therefore recommend that the Court dismiss Mr. Sands' first ground for relief as non-cognizable.

### 2. *Ground Two: Conviction on Charge not Contained in Indictment*

In his second ground for relief, Mr. Sands asserts that the State violated his rights under the Fifth, Sixth, and Fourteenth Amendments because he was convicted and sentenced for a charge that he was not indicted on. While Mr. Sands' argument is not entirely clear, he appears to be asserting that, after merging the two RICO counts (Counts One and Two), the trial court created a new "Count Two," conspiracy to commit aggravated murder, in violation of his due process rights. The Warden responds that Mr. Sands procedurally defaulted on this and that it is not cognizable. I agree with the Warden on both arguments.

With respect to procedural default, the Warden concedes that Mr. Sands raised his second ground for relief as his second assignment of error in his appeal to the Eleventh

Appellate District from the trial court's *nunc pro tunc* sentencing entry. (ECF No. 8-2, Exhibit 62). It is not clear to me that the Warden is correct, as Mr. Sands' second assignment of error in that proceeding appears to argue that he was improperly sentenced on allied offenses of similar import. *Id*. Regardless, however, the Warden correctly notes that Mr. Sands did not reassert that assignment of error in his subsequent appeal to the Ohio Supreme Court. Thus, as the Warden argues, Mr. Sands failed to present this ground for relief at all levels of the state court review process and did not exhaust the claim. *See O'Sullivan*, 526 U.S. at 845. And, because the time for him to do so has long since expired, he has procedurally defaulted on it. *See Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review").

Mr. Sands also raised his second ground for relief in his April 2020 motion for leave to file a motion to dismiss a void sentence. (ECF No. 8-3, Exhibit 148). However, the Eleventh Appellate District held that Mr. Sands' argument was barred by the doctrine of res judicata because Mr. Sands could have raised it during his direct appeal. (ECF No. 8-3, Exhibit 154, ¶ 8). The Ohio Supreme Court then declined to accept jurisdiction over Mr. Sands' appeal in a one sentence order, leaving the Eleventh Appellate District's decision as the last reasoned judgment on the issue. *See Ylst*, 501 U.S. at 805.

The Warden is correct that the Eleventh Appellate District's application of res judicata means that Mr. Sands has procedurally defaulted on his second ground for relief. "The Ohio *re judicata* rule prevents postconviction relief on 'any defense or claimed lacked of due process that was raised or could have been raised by the defendant at trial, which resulted in that judgment or conviction, or on an appeal from that judgment.'" *Wogenstahl v. Mitchell*,

668 F.3d 307, 341 (6th Cir. 2012) (citing *State v. Cole*, 2 Ohio St. 3d 112, 443 N.E.2d 169, 171 (1982)) (emphasis omitted).

Ohio's res judicata doctrine is a procedural rule that Mr. Sands failed to comply with, and thus satisfies the first prong of *Maupin*. The second *Maupin* factor is also satisfied because the Eleventh Appellate District actually applied res judicata to bar Mr. Sands' claim. The third *Maupin* factor is likewise satisfied, as it is "established law in this circuit that an Ohio court's application of the doctrine of *res judicata* is an independent and adequate state ground sufficient to bar habeas relief." *Hand v. Houk*, 871 F.3d 390, 410 (6th Cir. 2017).[5]

Because the first three *Maupin* factors are satisfied, Mr. Sands must demonstrate either cause and prejudice to excuse his procedural default or that failure to consider his claim would result in a fundamental miscarriage of justice. *See Maupin*, 785 F.2d at 138; *Coleman*, 501 U.S. at 750. However, Mr. Sands does not argue that he has cause to excuse his default. Nor has he presented new, reliable evidence not available at trial establishing that he is actually innocent of the charges, as required to bring his claim within the fundamental miscarriage of justice exception. *See Schlup*, 513 U.S. at 324. Accordingly, I recommend that the Court dismiss Mr. Sands' second ground for relief as procedurally defaulted.

Alternatively, I recommend that the Court dismiss Mr. Sands' second ground for relief as non-cognizable. Although Mr. Sands argues that he was sentenced to ten years in prison for a charge not included in the indictment, the Eleventh Appellate District found that the trial court merely renumbered the existing counts after merging the two RICO counts. (ECF No.

---

[5] The fact that the Eleventh Appellate District considered the merits of Mr. Sands' claim in the alternative does not eliminate the procedural default. *See Conley v. Warden Chillicothe Corr. Inst.*, 505 F. App'x 501, 506 (6th Cir. 2012) ("The Ohio court's alternative ruling on the merits did not remove the procedural default because 'a state court need not fear reaching the merits of a federal claim in an alternative holding.'") (quoting *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989))

8-3, Exhibit 154, ¶ 12). Whether it was proper for the trial court to renumber those counts is a purely a question of state law that is not cognizable on federal habeas review. *See Bey*, 500 F.3d at 519. I thus alternatively recommend that the Court dismiss Mr. Sands' second ground for relief as non-cognizable.

### 3. Ground Three: Defective Indictment

In his third ground for relief, Mr. Sands asserts that his due process rights were violated because the indictment failed to place Mr. Sands on notice of the charges against him and because it failed to cite the essential elements of the charged offenses. The Warden argues that Mr. Sands procedurally defaulted on this claim and that it is not cognizable. I agree.

Mr. Sands did not raise his third ground for relief in his direct appeal following his 2016 resentencing, Instead, he raised the argument for the first time in his December 2016 motion for leave to file a motion for arrest of judgment. (ECF No. 8-2, Exhibit 70). However, the Eleventh Appellate District, the court that issued the last reasoned judgment on the issue, held that Mr. Sands' argument was both untimely and barred by res judicata because he could have raised it on direct appeal but failed to do so. (ECF No. 8-2, Exhibit 75, ¶¶ 12-13).

As discussed above, the Eleventh Appellate District's application of res judicata means that Mr. Sands has procedurally defaulted on his claim. In addition, Mr. Sands has likely procedurally defaulted on his third ground for relief because the Eleventh Appellate District rejected it as untimely. *See Mock v. Bracy*, No. 4:22-cv-00937, 2024 WL 2347279, at *18 n. 20 (N.D. Ohio May 22, 2024) ("courts in the Sixth Circuit appear to consider a state court's denial of a motion as untimely as a procedural default"). Mr. Sands also again fails to establish either cause and prejudice to excuse his procedural default or that application of a procedural bar would result in a fundamental miscarriage of justice. I thus recommend that the Court dismiss Mr. Sands' third ground for relief as procedurally defaulted.

Alternatively, I recommend that the Court dismiss it because it is not cognizable. "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002). "Fair notice has been given when 'the offense [is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial.'" *Jones v. Hooks*, 3:16 CV 849, 2017 WL 4236525, at *18 (N.D. Ohio Aug. 23, 2017), *report and recommendation adopted*, 2017 WL 4227835 (N.D. Ohio Sept. 22, 2017) (quoting *Roe*, 316 F.3d at 570). "An indictment which fairly but imperfectly informs the accused for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986).

While Mr. Sands attempts to cast his challenge to the indictment as a question of notice, his traverse belies that assertion. Instead, Mr. Sands argues that the indictment was defective because it focused on the materials he intended to use to carry out those crimes and omitted required elements of the offenses, including that he acted with knowledge, prior calculation, and design. (ECF No. 13, PageID # 2255-56). Even assuming that Mr. Sands is correct that the indictment contained technical defects, he does not dispute that he was aware he was charged with RICO violations, conspiracy to commit murder, and conspiracy to commit arson. Nor does he claim that he was actually unaware of the conduct the State alleged formed the basis of those charges. Because Mr. Sands' argument is directed to an issue other than notice, it is not cognizable in a federal habeas proceeding.

Mr. Sands also argues that the indictment was insufficient to confer jurisdiction over him. However, "[a] determination of whether a state court is vested with jurisdiction under

state law is a function of the state courts, not the federal judiciary." *Davis v. Eppinger*, No. 1:18 CV 2911, 2019 WL 626426, at *1 (N.D. Ohio Feb. 14, 2019) (quoting *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976)). "Accordingly, whether an indictment or other charging document is sufficient to confer jurisdiction in a state criminal case is an issue of state law not cognizable on federal habeas corpus review unless the charging document is so deficient as to deprive a petitioner of fair notice of the charges against him." *Id*. Because the indictment was not so deficient here, I alternatively recommend that the Court dismiss Mr. Sands' third ground for relief as non-cognizable.

### 4. *Ground Four: Failure to Make Requisite Fact-Finding Before Imposition of Consecutive Sentences*

In ground four, Mr. Sands asserts that his due process rights were violated because the trial court sentenced him to a term of incarceration longer than the minimum available sentence without engaging in certain required fact-finding under Ohio Law. The Warden again argues that Mr. Sands procedurally defaulted on this claim and that it is not cognizable in a federal habeas proceeding. I agree.

Mr. Sands did not raise his fourth ground for relief in his direct appeal. Instead, he raised it in his February 2020 "motion that the trial court imposed an sentence on the defendant that is contrary to law." (ECF No. 8-2, Exhibit 111). The Eleventh Appellate District, the last court to issue a reasoned decision on the issue, held that Mr. Sands' argument was barred by res judicata because he could have raised it on direct appeal but failed to do so. (ECF No. 8-2, Exhibit 117, ¶¶ 10-12). As discussed above, the Eleventh Appellate District's application of res judicata constitutes an adequate and independent state ground resulting in a procedural default, and Mr. Sands has not provided any basis on which to excuse his procedural default. I thus recommend that the Court dismiss ground four as procedurally

defaulted.

Alternatively, I recommend that the Court dismiss ground four because it is not cognizable. "Courts have consistently held that a habeas petitioner cannot challenge the interpretation and application of Ohio's sentencing laws because 'a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action.'" *Fritz v. Fender*, No. 1:23 CV 00221, 2023 WL 7474054, at *1 (N.D. Ohio Oct. 23, 2023) (citing *Croce v. Miller*, No. 1:15-CV-1758, 2017 WL 3394046, at *22 (N.D. Ohio July 12, 2017) (collecting cases)). Mr. Sands' argument that the trial court failed to make the requisite fact-finding under Ohio law before imposing a sentence greater than the minimum permitted turns solely on the proper interpretation of Ohio's sentencing laws and thus not cognizable in this proceeding. I alternatively recommend that the Court dismiss his fourth ground for relief on that basis.

### 5. Ground Five: Imposition of Sentence on Charge Mr. Sands was not Convicted Of

In his fifth and final ground, Mr. Sands argues that his due process rights were violated because he is being incarcerated on a conspiracy to commit arson charge for which he was not convicted. I again conclude that that this ground is procedurally defaulted and not cognizable.

Mr. Sands did not raise his fifth ground for relief in his direct appeal. Instead, he raised it in his petition for a writ of habeas corpus that he filed in the Third Appellate District in June 2022. (ECF No. 8-3, Exhibit 172). The Third Appellate District, the court that issued the last reasoned judgment on Mr. Sands' petition, dismissed the petition, among other reasons, because it was barred by res judicata. (ECF No. 8-3, Exhibit 174). As noted above, res judicata is an adequate and independent state ground that results in a procedural default. As with his

other claims, Mr. Sands has not provided any grounds to excuse his procedural default, and I recommend that the Court dismiss his fifth ground for relief as procedurally defaulted.

I also conclude that Mr. Sands' fifth ground is not cognizable in a federal habeas proceeding. It is true that "[i]ncarcerating a prisoner after the expiration of his maximum sentence may result in a constitutional violation." *Kipen v. Renico*, 65 F. App'x 958, 959 (6th Cir. 2003)). However, "the actual computation of [a petitioner's] prison term involves a matter of state law that is not cognizable under 28 U.S.C. § 2254." *Id.* Here, while Mr. Sands argues that he was sentenced for an offense for which he was acquitted, the Third Appellate District found that there was "no support" for that contention. (ECF No. 8-3, Exhibit 174). Rather, it appears that Mr. Sands is confused about the manner in which the trial court renumbered the counts after merging the two RICO charges. To the extent he asserts that the trial court erred in merging the counts or in renumbering them, that argument is not cognizable in this proceeding because it involves solely a question of Ohio sentencing law. *See Kipen*, 65 F. App'x at 959; *Fritz* 2023 WL 7474054, at *1 (N.D. Ohio Oct. 23, 2023). I therefore alternatively recommend that the Court dismiss Mr. Sands' fifth ground as non-cognizable.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. <u>Legal Standard</u>

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden

for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B.  Analysis**

Mr. Sands has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, Mr. Sands' motion for a full printed text of the Warden's return of writ (ECF No. 10) and his motion to expand the record (ECF No. 14) are DENIED.

I RECOMMEND that the Court DISMISS Mr. Sands' petition for a writ of habeas corpus under 28 U.S.C. § 2254. Mr. Sands' other pending motions (ECF Nos. 12, 16, and 18) are DENIED AS MOOT. I also recommend that the Court not grant him a certificate of appealability. I further recommend that Warden George Frederick be substituted for Warden Harold May as the respondent in this proceeding.

Dated:  December 20, 2024          */s/ Jennifer Dowdell Armstrong*
                                   Jennifer Dowdell Armstrong
                                   U.S. Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent

appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).